**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-02821-DDD-NRN

CHANEL GIRALDO NIETO,

Petitioner-Plaintiff,

v.

DAWN CEJA, in her official capacity as Acting Warden of the Aurora Contract Detention Facility;
KELEI B. WALKER, in her official capacity as Acting Director of the Denver Field Office of U.S. Immigration and Customs Enforcement;
ALEJANDRO MAYORKAS, in his official capacity as Secretary of the U.S. Department of Homeland Security
PATRICK LECHLEITNER, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; and
MERRICK GARLAND, in his official capacity as Attorney General of the United States,

Respondent-Defendants.[1]

---

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

---

Petitioner-Plaintiff Chanel Giraldo Nieto moves for a preliminary injunction directing her immediate release from immigration detention, or in the alternative, an individualized bond hearing before an immigration judge. Doc. 6. The duration of Ms. Giraldo Nieto's ongoing

[1] To the extent one or more of the Respondent-Defendants has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d). The Respondent-Defendants must file a status report within **fourteen days** identifying the name of any successor officers who have been automatically substituted as parties under Rule 25(d).

detention—approximately thirty-two months to date—and its effects on her mental health are lamentable. It is clear that she is suffering in detention and that her significant mental-health problems are made worse by being detained. But for the following reasons, the governing legal precedents foreclose the relief she requests. Her motion is therefore denied.

## BACKGROUND[2]

Ms. Giraldo Nieto is a native of Venezuela and a citizen of Venezuela and Colombia. Doc. 28 at 6. She [redacted]

[redacted]

[2] In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

[3] [redacted]

[redacted]

On October 12, 2022, Ms. Giraldo Nieto entered the United States and was taken into custody by Customs and Border Protection. Doc. 1 at 7; Doc. 23-1 at 3. She was interviewed by U.S. Citizen and Immigration Servies and established a credible fear of persecution if she were to return to Venezuela or Colombia. Doc. 23-1 at 3; *see also* Doc. 23-2 at 2-5. The Department of Homeland Security then filed a petition charging Ms. Giraldo Nieto with being inadmissible to the United States under the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537, and Ms. Giraldo Nieto filed an application for asylum and withholding of removal under that Act, as well as an application for withholding or deferral of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (implemented by 8 C.F.R. §§ 208.16-208.18, 1208.16-1208.18). Doc. 23-1 at 13.

In December 2022, Ms. Giraldo Nieto admitted the charges of removability. Doc. 23-1 at 14. In May 2024, the Immigration Judge issued a decision finding that:

- Ms. Giraldo Nieto is removable as charged.
- Ms. Giraldo Nieto's testimony was fully credible and consistent with the record.

- [redacted]
- [redacted]
- [redacted], which makes her ineligible for asylum and withholding of removal under the Immigration and Nationality Act and ineligible for withholding of removal under the Convention Against Torture; and
- Ms. Giraldo Nieto is entitled to deferral of removal to both Venezuela and Colombia under the Convention Against Torture because it is more likely than not that she will be tortured with the acquiescence of public officials if she is removed to those countries.

Doc. 23-1 at 13-45. The Immigration Judge ordered that Ms. Giraldo Nieto be removed to Venezuela or in the alternative to Colombia, and granted her application for deferral of removal to those countries under the Convention Against Torture. *Id.* at 43.

DHS appealed the grant of deferral of removal to Colombia. Doc. 28 at 6-7. [redacted] In December 2024, the Board of Immigration Appeals issued a

---

4 The Immigration Judge stated that Ms. Giraldo Nieto's [redacted]

decision remanding the proceedings to the Immigration Judge "to apply the proper regulatory standard with respect to whether a public official would acquiesce in the harm that the respondent fears from private actors" in Colombia. *Id.* at 6-8. The issue of whether Ms. Giraldo Nieto is entitled to deferral of removal to Colombia under the Convention Against Torture currently remains pending before the Immigration Judge on remand. DHS has not challenged the grant of deferral of removal to Venezuela. *Id.* at 7.

Ms. Giraldo Nieto has been detained since she was taken into custody in October 2022. She is currently detained in Aurora, Colorado [redacted]

[redacted]

Ms. Giraldo Nieto has sought release from detention multiple times during the pendency of her case:

- In March 2023, she submitted a request to Immigration and Customs Enforcement for parole from detention, which was denied because "any humanitarian factors in favor of parole were outweighed by security-related concerns pursuant to 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5(b)." Doc. 23-1 at 5.
- Also in March 2023, she requested a custody redetermination hearing before the Immigration Judge; a hearing was held in April 2023, and the Immigration Judge denied her request for release because "the court lacked jurisdiction to do so under prevailing immigration law." *Id.*
- In June 2023, Ms. Giraldo Nieto filed another request for a custody redetermination hearing; a hearing was held, and release was again denied for the same reason. *Id.* at 5-6.
- In June 2024, she submitted a request to ICE for release pursuant to ICE Directive 16004.1.[5] *Id.* at 10; Doc. 1-4 at 7, 13-14, 19-26, 28-36. ICE Directive 16004.1 is a "longstanding policy" that "noncitizens granted . . . [Convention Against Torture] protection by an immigration judge should be released pending the outcome of any DHS appeal of that decision," "absent exceptional circumstances, such as when the noncitizen presents a national security threat or a danger to the community, or any legal requirement to detain." Doc. 1-1 at 5. ICE denied Ms. Giraldo Nieto's request for release because "the security and danger concerns outweigh any humanitarian reason or public benefit," and "the security-related risks militate against release." Doc. 23-1 at 10-11. In its letter denying her request, ICE stated that "exceptional, overriding factors (e.g., law enforcement interests or potential foreign policy consequences) in your case militate against parole as follows: *ICE ERO Denver conducted an individualized risk classification and determined [you are] ineligible for release at this time.*" Doc. 1-4 at 38, 40-41. The Enforcement and Removal

[5] "ICE Directive 16004.1" refers collectively to a series of internal memoranda issued by the Immigration and Naturalization Service and ICE between April 2000 and June 2021. *See* Doc. 1-1.

Operations Field Office Director has approved Ms. Giraldo Nieto's continued detention, Doc. 23-1 at 10-11, as is required by ICE Directive 16004.1, Doc. 1-1 at 3, 4, 5-6.

- In July 2024, Ms. Giraldo Nieto requested that a senior official review the denial of her request for release. Doc. 1-4 at 44. She argued that the Field Office had improperly considered her request as a request for parole rather than a request pursuant to ICE Directive 16004.1. *Id.* An Enforcement and Removal Operations Senior Reviewing Official "reviewed the information [Ms. Giraldo Nieto] submitted and the available case information" and "concur[ed] with the Field Office's decision to continue detention." *Id.* at 47. The senior official noted that custody decisions are "discretionary decisions," and that "such decisions are made on a case-by-case basis, after considering the totality of the circumstances, as well as any applicable law and court orders." *Id.*

In October 2024, Ms. Giraldo Nieto filed suit in this Court, Doc. 1, and moved to preliminarily enjoin the Respondent-Defendants from continuing to detain her while her case proceeds in immigration court, Doc. 6. The operative pleading includes both:

(1) an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging violations of Ms. Giraldo Nieto's Fifth Amendment rights to procedural and substantive due process; and

(2) a complaint asserting claims under (a) the Administrative Procedure Act, 5 U.S.C. §§ 701-06, alleging violation of the doctrine set forth in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and (b) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-97.

Doc. 1 at 52-54; *see also* Jan. 23, 2025 Hr'g Tr. (Ms. Giraldo Nieto's counsel Sarah Gillman clarifying that the constitutional challenges are in a habeas application, and the APA/*Accardi* claim and Rehabilitation Act claim are in a complaint).[6]

---

[6] "[C]ourts are split as to whether they permit litigants to file combined habeas petitions and complaints." *Fuentes v. Choate*, No. 24-cv-01377-NYW, 2024 WL 2978285, at *12 (D. Colo. June 13, 2024). The Tenth Circuit has permitted litigants to bring both habeas and non-habeas claims in the same action, provided they comply with all applicable

## LEGAL STANDARDS

### I. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on her motion for a preliminary injunction, Ms. Giraldo Nieto must show: (1) that she is "substantially likely to succeed on the merits"; (2) that she will "suffer irreparable injury" if the injunction is denied; (3) that her "threatened injury" without the injunction outweighs the defendants' under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth preliminary-injunction factors "merge" where, as here, the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In addition, because the injunction Ms. Giraldo Nieto seeks is of a

---

procedural requirements. *See Whitemore v. Parker*, 484 F. App'x 227, 240 (10th Cir. 2012) (collecting cases). This includes paying the appropriate filing fee for both types of claims. *Fuentes*, 2024 WL 2978285, at *12. To date Ms. Giraldo Nieto has paid only the $5 filing fee for a habeas application. I will address all her claims in connection with the instant motion for preliminary relief, but if she wishes to pursue both types of claims further, she must pay the filing fee for a civil complaint. She should also consider whether, given the different procedural requirements for each type of claim, she wishes to open a separate case for her non-habeas claims. *See, e.g.*, *Chavez-Garnett v. Att'y Gen. N.M.*, No. 25-cv-0072-KWR-KBM, 2025 WL 1263309, at *1 (D.N.M. Apr. 29, 2025) (finding petitioner-plaintiff "will obtain no benefit from prosecuting mixed claims" and "proceed[ing] with mixed claims may also confuse the issues or increase the risk that . . . [the] habeas claims are dismissed based on a procedural defect," and directing Clerk of Court to open separate case for non-habeas claims).

"disfavored" type—it would mandate action (rather than prohibiting it) and change the status quo—she faces a heavier burden and must make a "strong showing" that the first and third factors weigh in her favor. *Mrs. Fields*, 941 F.3d at 1232.

## II. Habeas Corpus

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear constitutional challenges brought by noncitizens who are detained pursuant to the federal immigration statutes. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

# DISCUSSION

## I. Legal Framework Governing Immigration Detention

While removal proceedings are being adjudicated, a noncitizen may be detained pursuant to 8 U.S.C. § 1225 or 1226. The former applies to "applicants for admission" like Ms. Giraldo Nieto "who arrive[] in the United States," and the latter applies to aliens who have been physically present in the United States continuously for at least two years. *See* 8 U.S.C. § 1225(a)(1), (b)(1)(A)(iii); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018); *DHS v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). Under Section 1225(b)(1), if an inadmissible "arriving alien" establishes a credible fear of persecution, "the alien shall be detained for further

consideration of [an] application for asylum," unless the alien is "paroled." 8 U.S.C. § 1225(b)(1)(B)(ii); *accord Jennings*, 583 U.S. at 287-89; *Marczak v. Greene*, 971 F.2d 510, 513 (10th Cir. 1992). Parole is governed by 8 U.S.C. § 1182(d)(5), which authorizes the Secretary of Homeland Security, "in his discretion," to parole noncitizens applying for admission to the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See also* 8 C.F.R. § 212.5. If an alien applying for asylum has not been paroled, "detention must continue until immigration officers have finished considering the application for asylum, or until removal proceedings have concluded." *Jennings*, 583 U.S. at 299 (cleaned up).

If an order of removal is issued, the Convention Against Torture prevents removal if an alien demonstrates it is more likely than not that she will be tortured if removed to a particular country. *See* 8 C.F.R. §§ 208.16(c), 208.17(a). When an alien is granted deferral of removal under the Convention Against Torture, "removal [is] deferred only to the country in which it has been determined that the alien is likely to be tortured," and the alien may still be removed to an alternate country. 8 C.F.R. § 208.17(b)(2). Deferral of removal does not "alter the authority of [ICE] to detain an alien . . . who is otherwise subject to detention." 8 C.F.R. § 208.17(c).

After an order of removal becomes final, the government may detain an alien pursuant to 8 U.S.C. § 1231 while it attempts to effectuate the alien's removal, but this detention may not be indefinite. *See* 8 U.S.C. § 1231; 8 C.F.R. § 241.4; *Zadvydas v. Davis*, 533 U.S. 678 (2001); *see also* Doc. 1-1 at 2 (discussing policy for considering release of aliens who have been finally granted deferral of removal to a specific country if ICE is not actively pursuing removal to an alternate country). Section 1231

does not yet apply in Ms. Giraldo Nieto's case because her order of removal has not become final.

Ms. Giraldo Nieto remains detained pursuant to Section 1225(b)(1) while her removal proceedings are being adjudicated. One of the disputes in this case concerns what legal parameters govern ICE's parole determinations when DHS has appealed an immigration judge's grant of protection under the Convention Against Torture, and the extent to which this Court may review such parole determinations. As noted above, the INS and ICE issued a series of internal memoranda between April 2000 and June 2021 that are referred to collectively as "ICE Directive 16004.1." *See* Doc. 1-1. ICE Directive 16004.1 provides that:

> In general, it is ICE policy to favor release of aliens who have been granted protection relief [under the Convention Against Torture] by an immigration judge [and ICE has entered an appeal of the decision], absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain.
>
> . . . Arriving aliens should be considered for parole.
>
> In all cases, the Field Office Director must approve a decision to keep an alien granted protection relief in custody pending appeal . . . . This review cannot be delegated beyond the Field Office Director or anyone acting in that capacity.

*Id.* at 3 (Feb. 9, 2004); *accord id.* at 4 (Mar. 6, 2012 "reminder that the February 9, 2004 ICE Memorandum . . . [is] still in effect and should be followed"); *id.* at 5 (June 7, 2021 "reminder to ensure that ICE personnel remain cognizant of and continue to follow this Directive," reiterating that "'arriving aliens' should be considered for parole").

Ms. Giraldo Nieto asserts that her request for release pursuant to ICE Directive 16004.1 was not a request for parole. *See, e.g.*, Doc. 6 at 14 ("[T]his was not a parole request, another form of custody review with different standards . . . for noncitizens in ICE custody under a different

procedural posture."). But that assertion would doom her request for release. Section 1225 provides that detention is mandatory for arriving aliens "who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). As Ms. Giraldo Nieto has not been admitted into the United States, detention is mandatory unless she is paroled. *Id.* So her request for release pursuant to ICE Directive 16004.1 must be construed as a request for parole. And ICE Directive 16004.1 itself expressly states that arriving aliens in Ms. Giraldo Nieto's position "should be considered *for parole*." Doc. 1-1 at 3, 5 (emphasis added).

## II. Habeas Application

As noted above, Ms. Giraldo Nieto's habeas application alleges that her continued detention violates her rights to both procedural and substantive due process.

### A. Procedural Due Process

Inadmissible arriving aliens like Ms. Giraldo Nieto do not have a cognizable liberty interest in being released on parole as a matter of procedural due process. *Sierra*, 258 F.3d at 1218 & n.3 (petitioner was "legally considered to be detained at the border and hence as never having effected entry into this country" (citing *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993), *amended by* 997 F.2d 1122 (5th Cir. 1993)));[7] *accord Zadvydas*, 533 U.S. at 692-94 (recognizing "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered" and noting that "[i]t is well

[7] The *Sierra* court used the term "excludable alien" rather than "inadmissible arriving alien" or "applicant for admission," consistent with the statutory designations that existed at the time the petitioner came to the United States. 258 F.3d at 1215 n.1, 1216 n.2; *see also Chi Thon Ngo v. INS*, 192 F.3d 390, 393-94 & n.4 (3d Cir. 1999) (explaining terminology changes in 1996 amendments to Immigration and Naturalization Act).

established that certain constitutional protections . . . are unavailable" to the latter (discussing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953))); *see also Thuraissigiam*, 591 U.S. at 107, 138-40. "Ordinarily, then, '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). This does not mean that an inadmissible arriving alien has no due-process rights, but "rather, the applicable statutory process shapes her procedural due-process rights." *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020).

In *Zadvydas*, the Supreme Court held that, for "aliens who were admitted to the United States but subsequently ordered removed," Section 1231(a)(6) contains an implicit "reasonable time" limitation on detention—an alien may be detained beyond the ninety-day "removal period" only for such time as is reasonably necessary to secure the alien's removal, and detention may not continue if removal is "no longer practically attainable." 533 U.S. at 682, 690, 699. The Court read that implicit limitation into Section 1231 under the canon of constitutional avoidance because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 682, 689-90, and "post-removal-period detention, *unlike detention pending a determination of removability* . . . has no obvious termination point," *id.* at 697 (emphasis added). The Court also noted that the question presented dealt with aliens who had effected entry into the United States, and that "[a]liens who have not yet gained initial admission to this country would present a very different question."[8] *Id.* at 682, 692-94.

---

[8] In *Clark v. Martinez*, the Supreme Court clarified that the "reasonable time" limitation recognized in *Zadvydas* also applies to inadmissible arriving aliens who become subject to a final order of removal and are then detained under Section 1231(a)(6), even though "the constitutional

In *Jennings*, the Court addressed detention pending a determination of removability and held that, unlike Section 1231(a)(6), Section 1225(b) does *not* impose an implicit statutory limitation on the permissible length of detention while removal proceedings are ongoing. 583 U.S. 281. Nor does the statute implicitly give detained aliens the right to periodic bond hearings during the course of their detention. *Id.* The Court again pointed out that detention under Section 1225(b) has a definite termination point—the conclusion of removal proceedings—where "[b]y contrast, Congress left the permissible length of detention under § 1231(a)(6) unclear." *Id.* at 299. Because Section 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances," it cannot reasonably be read to impose a limit on the length of detention prior to the conclusion of removal proceedings. *Id.* at 297-303. The Court in *Jennings* did not address the constitutional question of whether the Due Process Clause imposes some constraint on the length of mandatory detention under Section 1225(b), but it did note that certain aliens—namely, those who have not effected entry into the United States—"may not be entitled to [relief] as a constitutional matter." *Id.* at 312-13 (citing *Mezei*, 345 U.S. 206).

Since *Jennings*, courts have "sharply disagree[d] about the reach of the Due Process Clause as applied to arriving aliens." *Gonzalez Aguilar*, 448 F. Supp. 3d at 1212. Some courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an

---

concerns that influenced our statutory construction in *Zadvydas* are not present for aliens . . . who have not been admitted to the United States." 543 U.S. 371, 377-86 (2005). The Court reasoned that the same statutory text must be given the same meaning in all cases, even if the constitutional problems that dictated the construction in *Zadvydas* only pertain to a subset of the aliens who may be detained under the statute. *Id.*

immigration judge, or some other form of individualized review of eligibility for release beyond the opportunity to request discretionary parole under Section 1182(d)(5). *E.g.*, *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 848-51 & n.12 (E.D. Va. 2020) (collecting cases); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772-73 (S.D. Cal. 2020); *Clerveaux v. Searls*, 397 F. Supp. 3d 299, 309-22 (W.D.N.Y. 2019). But other courts have held that due process imposes no time limit or hearing requirement while an alien is detained pending removal proceedings. *E.g.*, *Banyee v. Garland*, 115 F.4th 928, 931-34 (8th Cir. 2024) (applicable Supreme Court authorities "leave no room for a multi-factor 'reasonableness' test,"[9] and instead set forth "a bright-line rule" that "the government can detain an alien [under Section 1225(b) or Section 1226(a) or (c)] for as long as deportation proceedings are still 'pending'" (emphasis omitted)); *Aguayo v. Martinez*, No. 1:20-cv-00825-DDD-KMT, 2020 WL 2395638, at *4 (D. Colo. May 12, 2020) ("'detention during removal proceedings'—even longer-than-average detention—'is a constitutionally permissible part of that process' so long as there is no evidence that the government is[] improperly or arbitrarily delaying"[10] proceedings (quoting *Demore*, 538 U.S. at 531)); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-50 (S.D.N.Y. 2018) ("*Mezei* instructs that, for [inadmissible arriving] aliens . . . the Constitution extends no farther than statutory language itself," and "the statutory language [and *Jennings*] make[] clear that aliens detained

---

9 Ms. Giraldo Nieto urges me to apply this sort of multi-factor test in this case. *See* Doc. 6 at 17-19.

10 Both sides argue that the other has contributed to delays in Ms. Giraldo Nieto's removal proceedings. *See* Doc. 1 at 12-17, 34-35; Doc. 12 at 12; Doc. 23 at 12-13; Doc. 26 at 13-14. I have reviewed the procedural history of her case. *See* Doc. 23-1 at 3-10, 14-17. Both sides are correct to some extent, but I see no indication that any delay caused by the government was due to bad faith or rises to the level of improper or arbitrary delay.

pursuant to Section 1225(b)(1)[] have no statutory entitlement to bond hearings.").

The Tenth Circuit has not addressed this issue. But I agree with the persuasive authorities reasoning that, in light of *Jennings* and the Tenth Circuit's treatment of *Mezei* in pre-*Jennings* cases, procedural due process does not afford inadmissible arriving aliens subject to prolonged detention a right to release or a bond hearing prior to the conclusion of removal proceedings. *See Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *5 to *8 (D. Kan. June 24, 2020). Under *Mezei* and *Sierra*, inadmissible arriving aliens are entitled only to the statutory procedures authorized by Congress, and under *Jennings*, the procedures authorized by Section 1225(b) do not provide for bond hearings or place a time limit on detention while removal proceedings are pending.[11] *Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza*, 2020 WL 3452967, at *5 to *8; *accord Poonjani*, 319 F. Supp. 3d at 647-50; *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 332-36 (W.D.N.Y. 2021)

[11] I also note that Ms. Giraldo Nieto's current detention is not "indefinite and potentially permanent" like that at issue in *Zadvydas*. *See Banyee*, 115 F.4th at 932; *see also Marczak*, 971 F.2d at 514 (petitioners detained under earlier version of Section 1225(b) were not "threatened with indefinite imprisonment"); *cf. Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) ("[F]or now, [the petitioner's twenty-six-month] detention [under Section 1231] is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite . . . termination point, and, thus, is more akin to detention [under Section 1226(c)] during the administrative review process, which was upheld in *Demore* . . . ."); *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (petitioner detained under Section 1231 during pendency of withholding-only Convention Against Torture proceedings was not in same "removable-but-unremovable limbo" at issue in *Zadvydas*, and due process did not require bond hearing after 4.5-year detention).

(discussing *Thuraissigiam*, 591 U.S. 103); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 142-45 (D.D.C. 2018); *see also Keo v. Warden of the Mesa Verde Ice Processing Ctr.*, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *5 to *8 (E.D. Cal. Apr. 7, 2025) (following *Banyee*); *Rimtobaye v. Castro*, No. SA-23-CV-1529-FB (HJB), 2024 WL 5375786, at *2 to *3 (W.D. Tex. Oct. 29, 2024) (R. & R.) (same), *adopted by* 2025 WL 377722 (W.D. Tex. Jan. 31, 2025).

The statutory procedures authorized by Congress here dictate that Ms. Giraldo Nieto be detained unless she is admitted or paroled, 8 U.S.C. § 1225(b)(1), and the parole statute commits the decision of whether to parole an inadmissible arriving alien to the discretion of the Secretary of Homeland Security, 8 U.S.C. § 1182(d)(5). In this context, a parole decision "while invested with considerable discretion, is not entirely immune from judicial review," but "habeas review is limited to determining whether . . . officials 'have articulated *some* individualized facially legitimate and bona fide reason for denying parole, and *some* factual basis for that decision in each individual case.'" *Sierra*, 258 F.3d at 1219 (quoting *Marczak*, 971 F.2d at 518).[12]

That standard is met in this case. The ICE Field Office explained that Ms. Giraldo Nieto's parole request was denied because "exceptional, overriding factors (e.g., law enforcement interests or potential

[12] Neither *Sierra* nor *Marczak* addressed the question of whether prolonged detention violates the Due Process Cause, though the petitioner in *Sierra* had been detained for eight years and was subject to the same sort of indefinite and potentially permanent detention at issue in *Zadvydas*, *see* 258 F.3d at 1215-16, 1219, 1220. The petitioners in *Marczak* were in the same position as Ms. Giraldo Nieto—they were detained under an earlier version of Section 1225(b), and they had applied for asylum and requested parole pending adjudication of their exclusion proceedings under an earlier version of Section 1182(d)(5)—but they were detained for only four months before the district court ordered their release on bond. *See* 971 F.2d at 512-13 & n.6, 521.

foreign policy consequences) in your case militate against parole as follows: *ICE ERO Denver conducted an individualized risk classification and determined [you are] ineligible for release at this time.*" Doc. 1-4 at 38, 40-41. This is a facially legitimate reason for denying parole. *See* 8 U.S.C. § 1182(d)(5)(A) (parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit"); 8 C.F.R. § 212.5(b)-(c) (parole of certain groups of aliens "would generally be justified . . . provided the aliens present neither a security risk nor a risk of absconding," and "in the case of all other arriving aliens . . . [designated officials] may . . . parole . . . any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate"); Doc. 1-1 at 3 (parole may be denied for "exceptional concerns such as . . . danger to the community"). [redacted]

Because ICE articulated a facially legitimate reason for denying parole with some factual basis, and "[n]either the statutes nor the governing regulations require a hearing on parole [requests]," Ms. Giraldo Nieto has not been denied any procedural due process to which she is entitled. *Id.*; *accord Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza*, 2020 WL 3452967, at *5 to *8. She is therefore not substantially likely to succeed on the merits of her habeas application on

the basis that procedural due process requires she be released or given a bond hearing.

### B. Substantive Due Process

Ms. Giraldo Nieto argues that her continued detention violates her right to substantive due process because (1) her detention has become punitive, and (2) she is not receiving necessary health care, which violates the "state-created danger" doctrine.[13]

#### 1. Regulatory vs. Punitive Detention

A noncitizen's substantive due-process rights may be violated if immigration detention becomes punitive. *See*, *e.g.*, *Gisbert*, 988 F.2d at 1441-42. But "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) the restriction is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose. *Id.* at 747; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

Neither of those is true here. [redacted] is a rational, nonpunitive purpose for detention, and even prolonged detention is not an excessive

---

[13] The fact that inadmissible arriving aliens have no liberty interest in procedural due process beyond the statutory procedures afforded by Congress does not foreclose a substantive due-process claim. *Sierra*, 258 F.3d at 1218 n.3.

means of accomplishing that purpose. *See Demore*, 538 U.S. at 513, 515, 523, 528 (upholding constitutionality of detention under Section 1226(c) against substantive due-process challenge); *Gisbert*, 988 at 1442 (fact and duration of aliens' continued detention for over two years did not constitute punishment); *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1197-99 (D. Colo. 2024) (twenty-one-month detention under Section 1226(c) due to "resolution of multiple appeals to the BIA" did not violate substantive due process); *Gonzalez Aguilar v. McAleenan*, No. 19-cv-0412 WJ/SMV, 2019 WL 5864821, at *11 (D.N.M. Nov. 8, 2019) (R. & R.) (petitioner not likely to succeed on substantive due-process claim where continued detention after twenty-seven months was not indefinite and "will end when her removal proceedings end"), *adopted by* 448 F. Supp. 3d 1202 (D.N.M. 2020); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 127-28 (W.D.N.Y. 2021) (over thirty-two-month detention under Section 1225(b) did not violate substantive due process).

Ms. Giraldo Nieto does not acknowledge the applicable standard for evaluating whether her detention has become punitive; instead, she simply urges me to apply the same multi-factor test rejected above in connection with her procedural due-process arguments. *See* Doc. 6 at 19; Doc. 26 at 15 n.8. She provides no evidence or argument of intent to punish on the part of the government. *See Gisbert*, 988 F.3d at 1442 n.8 ("detention pending removal and stemming from exclusion proceedings is not intended as punishment"). Nor does she provide any argument that she is being detained for an illegitimate purpose, or any explanation as to why prolonged detention makes it any less likely that she may engage in criminal activity if released. *Cf. Martinez*, 760 F. Supp. 3d at 1197-99 & n.5.

Ms. Giraldo Nieto is not substantially likely to succeed on the merits of her habeas application on the basis that her detention has become punitive in violation of substantive due process.

**2. State-Created Danger Doctrine**

Substantive due process requires the government to ensure the reasonable safety of those in its custody. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). But even assuming that Ms. Giraldo Nieto can establish a substantive due-process violation based on a lack of adequate care for her [redacted], *see* Doc. 6 at 20-21, "[she] does not establish that such a violation would justify immediate release, as opposed to injunctive relief that would leave [her] detained while ameliorating any unconstitutional conditions" at her detention facility. *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *8 (W.D. Wash. Mar. 29, 2024) (R. & R.) (quoting *Ortiz v. Barr*, No. C20-497-RSM-BAT, 2020 WL 13577427, at *7 n.8 (W.D. Wash. Apr. 10, 2020)), *adopted by* 2024 WL 2861675 (W.D. Wash. June 6, 2024); *accord Rosa v. McAleenan*, 583 F. Supp. 3d 850, 878 (S.D. Tex. 2019) ("At the core of their allegations, Petitioners complain of the conditions in which CBP held them. Providing relief on this issue would not require the Petitioners' release, but would require only improving the conditions of confinement."); *Rodas Godinez v. ICE*, No. 2:20-cv-466 KWR/SMV, 2020 WL 3402059, at *3 (D.N.M. June 19, 2020) ("[R]elease is an extraordinary remedy. . . . Petitioner has failed to show why another, lesser remedy, such as changing the conditions of confinement is not available.").[14]

---

[14] *Cf. Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("[T]he appropriate remedy [for inadequate medical treatment] would be to call for proper treatment, or to award [the inmate] damages; release from custody is not an option."); *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990) (appropriate remedy for unconstitutional prison

Ms. Giraldo Nieto is not substantially likely to succeed on the merits of her habeas application on the basis that substantive due process requires her release due to lack of access to adequate health care in detention.[15]

## III. Administrative Procedure Act and *Accardi* Doctrine

### A. Review of Agency Action Generally

The Administrative Procedure Act generally allows judicial review of agency action "except where 'statutes preclude judicial review,' or where 'agency action is committed to agency discretion by law.'" *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 641 (10th Cir. 1990) (quoting 5 U.S.C. § 701(a)(1)-(2)). "These are two separate tests and must be taken in order. If there is no statute that precludes judicial review, § 701(a)(1), then we determine whether the action is committed to agency discretion by law, § 701(a)(2)." *Id.* Here, the challenged agency action—denial of parole—fails at least the first test.

The Immigration and Nationality Act precludes judicial review of a decision to grant or deny parole. The Act provides that "no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). And the parole statute specifies that "[t]he Secretary

---

conditions "is to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment"; "relief . . . does not include release from confinement").

[15] Even if this claim were considered as a separate civil-rights claim rather than as part of Ms. Giraldo Nieto's habeas application, *see supra* note 6, the result would be the same—she may seek injunctive relief requiring the government to provide constitutionally adequate care, but release is not an available remedy. *See Basri v. Barr*, 469 F. Supp. 3d 1063, 1070-71 (D. Colo. 2020).

of Homeland Security may . . . in his discretion parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The federal courts therefore lack jurisdiction to review the discretionary decision not to parole Ms. Giraldo Nieto after the Immigration Judge granted her deferral of removal under the Convention Against Torture. *Tafoya v. Napolitano*, No. 10-cv-01675-REB, 2011 WL 2669657, at *4 (D. Colo. July 8, 2011) (citing *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003)); *Aracely R.*, 319 F. Supp. 3d at 135 (Section 1252(a)(2)(B)(ii) "undoubtedly bars judicial review of individual parole decisions."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 327 (D.D.C. 2018) (court lacked jurisdiction "[t]o the extent Plaintiffs are challenging the determinations themselves—*i.e.*, the actual balancing of the merits of each application for parole" (emphasis omitted)).

Ms. Giraldo Nieto states, though, that she "is not challenging Respondents' discretionary decision-making," but "rather, she is challenging Respondents' failure to properly apply ICE Directive 16004.1."[16] Doc. 26 at 6-7, 9. And Section 1252(a)(2)(B)(ii)'s jurisdictional bar does not preclude APA claims under the *Accardi* doctrine alleging that an agency failed to follow its own binding regulations and policies. *See Aracely R.*, 319 F. Supp. 3d at 134-36, 145-54 (considering claim alleging ICE failed to follow ICE Directive 11002.1, which "imposes procedural

---

16 The defendants argue that Ms. Giraldo Nieto's APA/*Accardi* claim is moot because ICE Directive 16004.1 only applies during the pendency of an appeal, and DHS's appeal of deferral of removal to Colombia has now concluded. Doc. 31 at 4. But the Directive states that it applies "at all times following the grant of protection, including during any appellate proceedings and throughout the removal period," Doc. 1-1 at 4, and as Ms. Giraldo Nieto points out, the deferral of removal to Venezuela remains in place and was never appealed by DHS.

and substantive obligations" for making parole determinations); *Damus*, 313 F. Supp. 3d at 327-28 (considering claim alleging ICE failed to follow 2009 Parole Directive and seeking compliance with "minimum procedural safeguards" in the Directive).

### B. *Accardi* Doctrine

The *Accardi* doctrine "requires an agency to adhere to the policy and regulations it promulgates." *Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1186 (10th Cir. 2014) (cleaned up) (citing *Accardi*, 347 U.S. 260); *accord Barrie v. F.A.A.*, 16 F. App'x 930, 934 (10th Cir. 2001) ("[A]n agency must adhere to its own rules and regulations when an individual's due process interests are implicated.").[17] The doctrine "applies to regulations that exist to protect the rights of those regulated by the agency." *Barrie*, 16 F. App'x at 934. It does not apply to internal directives that exist to provide guidance to agency employees in carrying out agency policies. *Id.*; *see also United States v. Lockyer*, 448 F.2d 417, 420-21 (10th Cir. 1971); *KLC Farm v. Perdue*, 426 F. Supp. 3d 837, 851-54 (D. Kan. 2019); *Wilkinson*, 27 F. Supp. 2d at 60-61, 64.

The defendants argue that ICE Directive 16004.1 is the type of internal agency directive that does not give rise to an enforceable right, and they may well be correct. *See* Doc. 23 at 5-6 (citing *Jagers*, 758 F.3d

[17] I note that "'the caselaw is far from clear' as to whether *Accardi* derives from the [Administrative Procedure Act] or the Constitution's guarantee of due process." *Bourdon v. DHS*, 983 F.3d 473, 482 n.7 (11th Cir. 2020) (Martin, J., dissenting) (collecting cases); *see also, e.g.*, *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 47-66 (D.D.C. 1998) (concluding that "the *Accardi* doctrine is a constitutional hybrid" rooted in substantive due process, but it "is enforced at the subconstitutional level"); Thomas W. Merrill, *The* Accardi *Principle*, 74 Geo. Wash. L. Rev. 569, 569 (2006) ("The [Supreme] Court has variously suggested that [the *Accardi* principle] is inherent in the nature of delegated 'legislative power'; that it is required by due process; and that it is a principle of administrative common law.").

at 1186). But I need not decide that here, because even assuming Directive 16004.1 may be enforced under the *Accardi* doctrine, Ms. Giraldo Nieto has not demonstrated she is likely to succeed in showing that ICE failed to abide by it.

The available evidence indicates that ICE did in fact comply with the procedures set forth in Directive 16004.1. The Directive states that arriving aliens who have been granted Convention Against Torture protection should be considered for parole. Doc. 1-1 at 3, 5. Ms. Giraldo Nieto was considered for parole, and her parole request was denied. Doc. 1-4 at 40-42. The Directive further states that the ICE Field Office Director must approve a decision to keep an alien in custody following a grant of Convention Against Torture protection. Doc. 1-1 at 3, 4, 5-6. That was done in Ms. Giraldo Nieto's case. *See* Doc. 1-4 at 38, 40-42; Doc. 23-1 at 10-11. The Directive also states that that parole is favored "absent exceptional concerns such as . . . danger to the community." Doc. 1-1 at 3; *accord id.* at 5 ("absent exceptional circumstances, such as when the noncitizen presents . . . a danger to the community"). In denying Ms. Giraldo Nieto's parole request, ICE stated that "exceptional, overriding factors [such as] law enforcement interests" militate against parole in Ms. Giraldo Nieto's case due to her "individualized risk classification." Doc. 1-4 at 38, 40-41. [redacted]

Ms. Giraldo Nieto argues that she was denied a sufficiently individualized parole determination, noting that the Directive states that

> In considering whether exceptional circumstances exist, prior convictions alone do not necessarily indicate a public safety threat or danger to the community. Rather, the individual facts and circumstances of the case, including extensiveness, seriousness, and recency of the criminal

> activity, along with any evidence of rehabilitation, should be considered in making such determination.

Doc. 1-1 at 5; *see* Doc. 1 at 24, 28 n.7; Doc. 26 at 8-9, 10; *see also Marczak*, 971 F.2d at 515 (individualized determinations required (citing *Jean v. Nelson*, 472 U.S. 846, 857 (1985))). But in denying her parole request, ICE stated that it had "conducted an individualized risk classification assessment." Doc. 1-4 at 41; *see also id.* at 47 (senior official stated custody decisions "are made on a case-by-case basis, after considering the totality of the circumstances," and the official had "reviewed the information you submitted and the available case information" and "concurs with the Field Office's decision"). There is nothing in the current record to indicate that ICE did not, in fact, conduct the individualized risk assessment that it stated it did.[18] While a more robust explanation of ICE's determination of "exceptional circumstances" may be preferable, that is not required by the Directive. *See* Doc. 1-1 at 6 (stating only that the decision must be "appropriately documented"); *Marczak*, 971 F.2d at 521 (court could not substitute its judgment for that of INS district director, but "we hope district directors will in the future articulate the evidence supporting their parole decisions so that we may easily determine whether the underlying rationale is facially legitimate and bona fide, and supported by facts particular to each petitioner").

And importantly, even if Ms. Giraldo is successful in proving that ICE did not follow the procedures mandated by Directive 16004.1, the appropriate remedy would not be release but rather to remand the case to ICE to make an individualized parole determination in accordance with the procedures the Directive requires. *See Accardi*, 347 U.S. at 268

---

[18] The fact that Ms. Giraldo Nieto's counsel was told by plaintiffs' counsel on another case in another district that "the government admitted" a different ICE field office was not following Directive 16004.1 is inapposite. *See* Doc. 6 at 15.

(remanding for Board of Immigration Appeals to "exercise its own independent discretion, after a fair hearing," as regulations required); *Damus*, 313 F. Supp. 3d at 324, 337, 342-43 (ordering ICE to follow procedures mandated by 2009 Parole Directive, which included providing written notice of parole process, opportunity to submit documentation, availability of individualized parole interview, and explanation of reasons for parole denial); *Aracely R.*, 319 F. Supp. 3d at 157-58 (ordering ICE "to re-evaluate [the plaintiff] for parole in strict compliance with [ICE Directive 11002.1], including its procedural requirements, and without considering immigration deterrence").

Ms. Giraldo Nieto is therefore not substantially likely to succeed on the merits of her claim under the APA and *Accardi* insofar as she seeks injunctive relief in the form of release from detention.

## IV. Rehabilitation Act

The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a). To state a claim under the Act, a plaintiff must prove that: (1) she is an otherwise qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of an executive agency's program or activity, or was otherwise subjected to discrimination by the agency; and (3) such exclusion, denial of benefits, or discrimination was solely by reason of her disability. *Id.*; *accord Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992). An agency may be required to make reasonable accommodations to assure meaningful access to a program or benefit, but it "need not be required to make 'fundamental' or 'substantial' modifications to

accommodate" a person with a disability. *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985); *see also* 6 C.F.R. § 15.60(d) (DHS not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a program or activity or in undue financial and administrative burdens").

For purposes of this motion, I will assume without deciding that the Rehabilitation Act creates a private right of action for injunctive relief against executive agencies;[19] that Ms. Giraldo Nieto is a qualified individual with a mental-health disability; that her immigration proceedings are a "program or activity" within the meaning of the Act; and that she has been excluded from meaningful participation in those proceedings by reason of her mental-health conditions. But even assuming all those things, Ms. Giraldo Nieto has not demonstrated a substantial likelihood that release is the only available reasonable accommodation for her disability. *See also Fuentes*, 2024 WL 2978285, at *12 ("[T]he Court has located no authority demonstrating that Petitioner can request release from [ICE] custody under the Rehabilitation Act outside of the habeas context, nor has she provided any such authority to the Court."); *Bostock*, 2024 WL 3291033, at *8 (plaintiff's claim "that her PTSD and other mental health symptoms cannot be effectively controlled while she is detained, and that immediate release . . . is the only accommodation that will permit her to participate in her immigration proceedings" was "not cognizable under the Rehabilitation Act").[20]

---

[19] *See Bacote v. Fed. Bureau of Prisons*, No. 17-cv-03111-RM-NRN, 2021 WL 248808, at *8 to *9 (D. Colo. Jan. 26, 2021) (recognizing disagreement among lower courts as to whether injunctive relief against executive agency is available remedy), *vacated as moot by* 119 F.4th 808 (10th Cir. 2024).

[20] *Cf. Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 766 (11th Cir. 2020) (Rehabilitation Act claim based on "alleged failure to release [the plaintiff was] . . . without merit because [he] cannot show that releasing

Ms. Giraldo Nieto is therefore not substantially likely to succeed on the merits of her Rehabilitation Act claim insofar as she seeks injunctive relief in the form of release from detention.

**CONCLUSION**

Because Ms. Giraldo Nieto has not shown she is likely to succeed on the merits of any of her claims, her motion for a preliminary injunction cannot be granted, and I need not consider the other preliminary-injunction factors. *Colorado v. EPA*, 989 F.3d 874, 890 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors."); *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015) ("Because we agree with the district court that plaintiffs are unlikely to prevail on the merits, we need not address the remaining preliminary injunction factors.").

It is therefore **ORDERED** that:

Petitioner-Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, **Doc. 6**, is **DENIED**; and

Because this Order references various documents that the parties have filed under restriction, the Clerk of Court is **DIRECTED** to temporarily docket the Order at Level 1 restriction. To maintain that restriction, any affected party must file a motion to restrict pursuant to

---

him into a residential treatment facility is a reasonable accommodation for his mental illness," and requiring release "would 'fundamentally alter the nature' of . . . imprisonment services"); *Wragg v. Ortiz*, 462 F. Supp. 3d 476, 514 (D.N.J. 2020) ("Petitioners' bold request to release any and all inmates who may have any disability is simply not a reasonable accommodation within the meaning of the Rehabilitation Act."); *Denbow v. Me. Dep't of Corr.*, No. 1:20-cv-00175-JAW, 2020 WL 3052220, at *22 n.12 (D. Me. June 8, 2020) ("It seems unlikely . . . that there is no accommodation short of releas[e] . . . that would serve to address Petitioners' disabilities."); *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1330 (S.D. Fla. 2020) (an "unarrest requirement would work a fundamental alteration of the activity at hand: the arrest").

Local Civil Rule 7.2 within **fourteen days**. Any such motion must attach as an exhibit a public redacted version of the Order that redacts any reference to the material sought to be restricted.

DATED: June 12, 2025

BY THE COURT:

Daniel D. Domenico
United States District Judge